UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN W. MCGILL,<br><br>    **Plaintiff,**<br><br>v.<br><br>PATRICK NOGAN, et al.,<br><br>    **Defendants.** | Civil Action No. 14-8133 (SDW)<br><br><br>OPINION |

**WIGENTON**, District Judge:

Plaintiff, John W. McGill, filed a complaint against Defendants on December 31, 2014. (ECF No. 1). On June 15, 2015, this Court granted Petitioner's application to proceed *in forma pauperis*. (ECF No. 6). At this time, this Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim for which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set out below, this Court will dismiss Plaintiff's official capacity claims against all Defendants with prejudice to the extent that he seeks money damages, and will dismiss without prejudice Plaintiff's deprivation of property claims against all Defendants, but will permit Plaintiff's first amendment retaliation claim against Defendant Diane Patrick in her individual capacity to proceed at this time.

**I. BACKGROUND**

The following background is drawn from the allegations contained in Plaintiff's complaint in which he asserts claims against Patrick Nogan ("Nogan"), Administrator of East

Jersey State Prison; Diane Patrick ("Patrick"), the head of the prison's education department; and William Anderson ("Anderson"), a former assistant administrator at the prison.  Plaintiff is a convicted prisoner currently serving a life sentence in East Jersey State Prison.  (ECF No. 1 at 7).  At some point during 2012, as Plaintiff approached the point at which he would be eligible for parole, Plaintiff's sister paid for him to begin a college correspondence course.  (*Id.* at 8).  Plaintiff chose specifically to pursue an associate's degree in criminal justice.  (*Id.* at 8).  Plaintiff, in order to complete this program, signed up for the prison's independent study program to receive access to test proctors and computers needed for schoolwork.  (*Id.* at 8-9).

As Plaintiff entered his second semester of study in January 2013, text books entitled *Policing – Learning Guide* and *Policing Today* (Document 3 attached to ECF No. 1 at 23) arrived and were seized as suspected contraband in the prison mailroom.  (ECF No. 1 at 8-9).  Plaintiff thereafter spoke with several prison officials, all of whom apparently confirmed that the books were considered contraband and would not be returned to Plaintiff's custody within the prison.  (*Id.* at 9-10).  Concerned that he could not complete his course without the books, Plaintiff then filed a property claim with the prison, which was denied.  (*Id.* at 10).  Plaintiff also filed a Tort Claims Act notice with the state.  (*Id.*).

Plaintiff apparently appealed the contraband decision to the New Jersey Superior Court - Appellate Division.  (*Id.* at 11).  The Appellate Division, upon the State's request, ultimately remanded the case for a written decision from prison officials.  (*Id.* at 13).  While the matter was pending in the Appellate Division, Plaintiff met with prison officials, including Defendant William Anderson.  (*Id.* at 11).  Anderson informed Plaintiff that the book was contraband and would not be permitted within the prison.  (*Id.*).  As a compromise, however, Plaintiff agreed to change his major from criminal justice to paralegal studies pursuant to a purported settlement

agreement under which the prison would pay a portion of the costs associated with the major change.[1] (*Id.* at 12). The prison, however, ultimately decided not to pay the agreed upon portion of the costs, and Plaintiff thus chose to change back to the criminal justice major under the belief that the Appellate Division would vindicate him. (*Id.* at 12).

Prior to the Appellate Division remand, the prison apparently also changed the criteria which must be met in order to be a member of the independent studies program. (*Id.*). Although Plaintiff alleges that this change was made in order to exclude him from the program, all prisoners in the program were required to resubmit requests for admittance to the program pursuant to the new criteria. (*Id.*). Plaintiff was not readmitted to the program under the new criteria. (*Id.*). During the process, Defendant Patrick also informed those seeking admission or readmission to the program that "all books received by inmates must be approved by the education department" and that "all correspondence courses had to be approved by her." (*Id.* at 13). Patrick apparently also told Plaintiff that he was never a member of the independent study program. (*Id.* at 13).

Following the Appellate Division's remand, an initial administrative decision as to the seizure of the books was rendered by Defendant Anderson on December 16, 2013. (Document 3 attached to ECF No. 1 at 23). In that decision, Anderson confirmed that the books had not been approved by the prison or the New Jersey Department of Corrections, and were excluded from the prison "due to the safety/security concerns over the subject matter." (*Id.*). Anderson also informed Plaintiff that he had ten days to decide whether to have the books sent to his family outside of the prison or destroyed. (*Id.*). Plaintiff appealed the decision to Administrator Nogan,

---

[1] Although Plaintiff includes in his complaint a release he signed in furtherance of this alleged agreement, it is not clear whether this settlement agreement was verbal in nature or was actually reduced to writing.

who issued a second opinion on March 13, 2014, identical in all pertinent respects to that issued by Anderson previously.  (*Id.* at 25).

Prior to March 13, 2014, Plaintiff also filed a second notice of appeal to the Appellate Division.  (ECF No. 1 at 15-16).  The State thereafter moved to dismiss this second appeal as unripe as Plaintiff had, at that point, not exhausted his administrative remedies.  (Document 3 attached to ECF No. 1 at 34-35).  Although it is not clear from Plaintiff's complaint, based upon the issuance of Nogan's opinion, this court presumes that the State's motion was granted and Plaintiff's second appeal was dismissed.

## II. DISCUSSION

### A. Legal Standard

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e.  The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A because Plaintiff is a convicted state prisoner bringing claims against governmental employees who is proceeding *in forma pauperis*.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not

do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim[2], the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

**B. Analysis**

**1. Plaintiff's claims against Defendants in their official capacities must be dismissed**

Plaintiff brings claims against all Defendants both in their individual capacities and in their official capacities as employees of the New Jersey Department of Corrections. A suit against a state employee in his official capacity represents only an alternative means by which to bring suit against the entity of which he is an employee. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978); *see also Grohs v. Yatauro*, 984 F. Supp. 2d 273, 280 (D.N.J. 2013); *see also Will v. Michigan Dep't of State Pol.*, 491 U.S. 58, 71 (1989). A suit against a state officer in his official

---

[2] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

capacity is therefore "no different from a suit against the state itself." *Grohs*, 984 F. Supp. 2d at 280.  As the Eleventh Amendment bars suits for monetary damages against States, their agencies, and their departments, and because state agencies are not "persons" amenable to suit within the meaning of § 1983, an officer of a state agency, including a state prison, may not be sued for money damages in his official capacity under § 1983.  *Id.; see also Ewing v. Cumberland Cnty.*, No. 09-5432, 2015 WL 1384374, at *25 (D.N.J. Mar. 25, 2015); *Brown v. New Jersey Dep't of Corr.*, No. 12-5069, 2014 WL 4978579, at *2 (D.N.J. Oct. 3, 2014); *Grabow v. S. State Corr. Facility*, 726 F. Supp. 537, 538-39 (D.N.J. 1989) (State department of corrections and state prison facilities are not "persons" under § 1983).  As the relief Plaintiff seeks is monetary, his claims against Defendants in their official capacity seeking such damages must be dismissed with prejudice.

**2.  Plaintiff's § 1983 claims against Defendants in their individual capacities**

Plaintiff seeks to sue Defendants for violations of his Fourteenth Amendment Due Process and First Amendment rights pursuant to 42 U.S.C. § 1983.  That statute provides "private citizens with a means to redress violations of federal law committed by state individuals." *Woodyard v. Cnty. Of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013).  To assert a claim under the statute, a plaintiff must show that he was deprived of a federal statutory or constitutional right by a person acting under color of state law.  *Id.*  When called upon to evaluate the merits of a § 1983 claim, a district court must first identify the contours of the right which the plaintiff claims has been violated and determine whether the plaintiff has properly asserted a violation of that right.  *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000).  Here, Petitioner asserts that Defendants violated his Fourteenth Amendment Due Process rights by depriving him of his property in the form of a text

book and the cost of a college correspondence course which Plaintiff was prevented from completing. Plaintiff also asserts that Defendant Patrick, in retaliation for Plaintiff's complaints, terminated him from the independent study program and effectively eliminated his ability to pursue his education, in violation of his First Amendment rights.

Plaintiff claims that Defendants deprived him of property without due process in violation of the Fourteenth Amendment. In general, to establish a procedural due process claim for the deprivation of property, a plaintiff must show that he possessed a property interest, of whch he was deprived by the state, and that the plaintiff did not receive notice and a reasonable opportunity to be heard. *See Rusnak v. Williams*, 44 F. App'x 555, 558 (3d Cir. 2002). "Where a state actor deprives an individual of property without authorization, [however,] either intentionally or negligently, that deprivation does not result in a violation of the Fourteenth Amendment so long as a meaningful post deprivation remedy for the loss is available. *See Hudson v. Palmer*, [468 U.S. 517, 530-36] (1984); *Parratt v. Taylor*, [451 U.S. 527, 543-44] (1981); *overruled in part on other grounds*, *Daniels v. Williams*, [474 U.S. 327] (1986)." *Love v. New Jersey Dep't of Corr.*, Civil Action No. 14-5629, 2015 WL 2226015, at *5 (D.N.J. May 12, 2015). The State of New Jersey has provided inmates, such as Plaintiff, with a proper post deprivation remedy in the form of the New Jersey Tort Claims Act. *See N.J. Stat. Ann.* § 59:1-1, *et seq.*; *Love*, 2015 WL 2226015 at *5.

The issue, however, becomes more complicated in the event that a plaintiff asserts that the deprivation of property resulted from established state procedure. *See, e.g., Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435-36 (1982). While *Logan* stands for the proposition that the lack of pre-deprivation process prior to the seizure of a plaintiff's property pursuant to established state policies generally violates due process, that rule is not universal. *See Reynolds v. Wagner*, 936 F.

Supp. 1216, 1228 (E.D. Pa. 1996) ("Admittedly, there is no pre-deprivation remedy. Such a remedy, however, is not always necessary every time a loss occurs stemming from an established governmental policy."), *aff'd* 128 F.3d 166 (3d Cir. 1997); *Shabazz v. Odum*, 591 F. Supp. 1513, 1517 (M.D. Pa. 1984) ("Due process, however, does not require a predeprivation hearing every time a loss occurs as a result of an established governmental procedure."); *see also Dantzler v. Beard*, Civil Action No. 09-275, 2010 WL 1008294, at *8-9 (W.D. Pa. Mar. 15, 2010); *Williams v. Healy*, Civil Action No. 08-2389, 2012 WL 2594348, at *16 (D.N.J. July 5, 2012) (citing *Dantzler* with approval). Even where a deprivation occurs pursuant to an established procedure, such as a prison policy, a post-deprivation remedy can sufficiently comport with due process where predeprivation process would be impossible or impracticable. *Dantzler*, 2010 WL 1008294, at *9. This is especially true in cases involving the seizure of purported contraband, a situation in which the provision of pre-deprivation process would be impractical at best. *See Monroe v. Beard*, 536 F.3d 198, 209-10 (3d Cir. 2008) (requiring only post-deprivation remedy for the seizure of purported contraband even when seizure occurred pursuant to a newly developed policy); *Barr v. Knauer*, 321 F. App'x 101, 103 (3d Cir. 2009) (finding no due process violation where a prisoner was deprived of an electric razor, even where such razors had previously been approved for prisoner possession, where an adequate post-deprivation remedy was provided).

      Plaintiff's due process claims arise directly out of the seizure of certain correspondence course text books and his subsequent loss of tuition as a result of not being able to make use of those text books. The seizure of Plaintiff's text books occurred because corrections officers believed the book to be contraband (*see* Document 3 attached to ECF No. 1 at 12); a suspicion which prison officials ultimately confirmed. (*Id.* at 23, 25). The loss of tuition funds, to the extent that they represent Plaintiff's property (as opposed to the property of his sister who apparently paid

the tuition), are a direct result of the seizure of the text books, and as a result Plaintiff was only deprived of them by the State to the extent that the text books were seized by the prison. As the deprivation in question occurred because the books seized were contraband, a pre-deprivation remedy would have been impracticable, and a post-deprivation remedy was all that was necessary to comport with due process, even if Plaintiff's supposition that the book was reclassified as contraband only after he ordered the text book proved accurate. *Monroe*, 536 F.3d at 209-10; *Barr*, 321 F. App'x at 103; *Dantzler*, 2010 WL 1008294, at *9. As the State of New Jersey has provided Plaintiff with an adequate post-deprivation remedy in the form both of the prison grievance process and the Tort Claims Act, Plaintiff has received all the process which was due. Indeed, Plaintiff has already sought relief through these mechanisms, and likely will continue to do so. (*See* Document 3 attached to ECF No. 1 at 20-25). Plaintiff's Fourteenth Amendment claim thus fails to state a claim for which relief can be granted and this Court will therefore dismiss that claim without prejudice as to all Defendants. As this Court finds no basis for the dismissal of Plaintiff's First Amendment retaliation claim at this time, that claim will be permitted to proceed against Defendant Diane Patrick in her individual capacity.

**III. CONCLUSION**

For the reasons stated above, Plaintiff's deprivation of property claims under the Fourteenth Amendment will be dismissed without prejudice as to all Defendants for failure to state a claim for which relief may be granted, Plaintiff's official capacity claims against all Defendants seeking money damages will be dismissed with prejudice, and Plaintiff's First Amendment retaliation claim against Defendant Patrick in her individual capacity will be permitted to proceed at this time. An appropriate order follows.


July 1, 2015                                            *s/ Susan D. Wigenton*
                                                        Hon. Susan D. Wigenton,
                                                        United States District Judge